recalls the case of James L. Turner v. Mr. Wells and Paul Weiss and Mr. Ginsburg. We'll be pleased to hear from you. May it please the Court, Your Honor. My name is Peter Ginsburg. I'm here on behalf of James Turner. The key issue presented for the Court today is whether a person in a law firm has the right to avoid scrutiny when, having been paid millions of dollars of fees, to satisfy a private business interest, an interest which is governed by a commercial pecuniary goal. Those people manipulate facts, omit facts, and slant its findings to serve those private interests. The district court essentially said yes. To put the case in a little context. So do I get that you're arguing that no specific factual statement was untrue, but the omissions around them made them untrue? There were certain mischaracterization of facts. I certainly wouldn't, I'm not suggesting that Mr. Wells purposely lied. But for instance, with regard to the Judas Code, Mr. Turner wasn't imposing a fine system for one player who blamed another player. I thought the report made it pretty clear that that was a player system. He might have known about it, but it was a player-created system. That, unfortunately, was one of the flaws in the report and one of the flaws in the Court's analysis. What Mr. Wells did was it took a system imposed by the players, which every football team has, a kind of kangaroo court, which is basically used to fund end-of-the-year dinners or trips, and juxtaposed that system with Mr. Turner trying to teach the players to take responsibility for their own actions and not to blame others. There was no need, no reason, no basis to include Mr. Turner's use of the word Judas in the context of the player system unless there had been a preordained determination that some of the coaches of the Dolphins had to take responsibility for Mr. Martin's peculiar personal choice to have left the team. You have to keep in mind that when Paul Weiss was hired to craft this report for Commissioner Goodell, the NFL was suffering from horrific publicity about its neglect of the concussion issues. It had taken an enormous amount of criticism in the bounty case where first Commissioner Goodell alleged that the Saints had endorsed trying to hurt opposing players, and then that allegation, which incidentally was investigated by Debevoise, another firm paid several million dollars, that that allegation was false. There was one thing after another. So then Martin left the team. There were insinuations in the media that he left because of his own sexual orientations and sensitivity, and the NFL couldn't withstand being alleged again to be insensitive to these kinds of issues, whether it was domestic violence or brain damage or whatever. So rather than an investigative report being solicited, our allegation, and what we would have proved if we had been able to go enter into discovery, was that Commissioner Goodell preordained the mission. It doesn't matter if you preordained it or not. If there's no defamatory statement, you're not getting anywhere. So you've got to come up with a defamatory statement. It is almost a classic case of defamation by implication. By the way, the defendants omitted facts, juxtaposed facts that weren't connected, and buried facts in order not to fit that preordained agenda. So I respectfully submit, Your Honor. So why don't you tell me, give me an example of what was the defamatory statement by implication, one of them. There are four main ones. Let me start with. And let's go to the pages of the report. We all have had the report. Tell us what paragraphs, pages of the report you say constitute defamation, either directly or by implication. I may do it this way, Your Honor. Mr. Wells, for instance, talked about the Player A incident in his report. Player A, who's not Mr. Martin. Correct. Okay. In his rendition of the Player A report. That's page 19 and 20. I'm looking at it. Yes, Your Honor. Mr. Wells determined that Player A had been subjected to inappropriate teasing, that he had been insulted by his teammates, and focused on, with regard to Mr. Turner, the end-of-the-year Christmas party with the offensive linemen. And what he suggested was that giving Player A the male doll fit into that narrative about Player A being humiliated by his teammates and omitted that Player A understood that wasn't what this male doll blow-up was all about, but instead, in fact, a tease about the fact that he, Player A, was always complaining that he was not having success with women. So Mr. Wells left out Player A's own perspective on the event. There were also another six or so players who were at the party who said that that Player A doll incident had nothing to do with teasing Player A about his sexual orientation. No one took it that way. The only person who ever took it that way was Mr. Wells. The report says Martin and another player reported they were surprised Coach Turner did this. We're not here about what Player A thought about it. We're here about, and the report was about Martin, basically, and he thought he drew certain inferences from it. They were taunting him about being gay because he got a male doll while everybody else got female dolls. Like, everybody else got female dolls, right? Yes, Your Honor. And Player A got a male doll. And I understand what you say. Player A knew what it was about. But the report is not focusing on what Player A says because we're here about what Martin thought about their environment. Respectfully, Your Honor, that wasn't how Commissioner Goodell characterized the report. It wasn't a report about Mr. Martin. It was a report about the doll incident. I understand. I understand it's a broader report about the bullying and what was going on there. But bullying and how it's perceived as bullying, all the players could have perceived reasonably that incident as bullying. Your Honor, respectfully. Teasing, bullying, whatever you want to call it. Joking. None of the players perceived it as bullying. Let me suggest. In fact, the report says that Incognito said that the Player A treatment was just all part of the regular activities, the joking, whatever. That's in the report. It's not omitted. That is in the report. But what isn't in the report is Player A's perception.  And what isn't in the report, which if this really were about Martin, Mr. Wells would have included, was a proper characterization of Mr. Martin and Mr. Martin's emotional difficulties from high school, the fact that he didn't even like football, the fact that he had engaged himself in these kind of sophomoric activities and had gone to strip clubs and had made homosexual remarks, and that Mr. Martin, in fact, left the football team because he had been demoted the week before. Mr. Wells kept all of that out because that wouldn't have satisfied the narrative, because it wouldn't have justified this ability to characterize Goodell as being the new sheriff who wasn't going to tolerate that behavior. I have a question about jurisdiction. You have to allege the citizenship of all the partners, correct? Yes, Your Honor. Okay. And as I understand it, you haven't done that. You haven't said that each of the partners of Paul Weiss is a citizen of another state. Respectfully, what we did was we made that general comment, and then this court, I believe it was, asked Paul Weiss to confirm that none of them were citizens of this state, and Paul Weiss did that.  Yes, Your Honor. Okay, and where do I find that? That's my recollection. I see my time is over. Well, just answer my question. Where do I find that? Oh, I'm sorry. I don't have that handy, Your Honor. There was an inquiry from this court to Paul Weiss. It's settled now that everybody agrees that there's nobody at Paul Weiss who's a citizen of Florida? Yes, we've accepted Paul Weiss's representation in that regard. All right. I guess I'll find out from them where that is. Let me ask you one last question before you sit down. Assuming we were to disagree with the district court and thought that one or more of these statements in this report were defamatory, we can affirm a district court's judgment on any ground, and in this case, why couldn't we affirm this judgment on the basis that your client is a public official and you did not allege actual malice in your complaint? Respectfully, because that wouldn't be a proper reading of the complaint. We did allege actual malice again and again and again in several places. Okay. I will reread the complaint. I don't think you did, but I'll reread it. Respectfully, and I think it would also be in error of law to find Mr. Turner a public figure. He's a public figure potentially with a limited purpose. Well, I'm from Alabama, and Bear Bryant and Nick Saban are both public officials. But they're not offensive linemen. Well, most coaches are, I think. Well, Judge, I think that Nick Saban makes $8 million and probably has more political sway than a lot of people in the state. I don't think that that would work for an offensive lineman who I would respectfully submit most people have never heard of. He's an offensive lineman coach. Coach, yes, Your Honor. I thought we had a case, though, that said, suggested. I'll have to go back and look at it. What case would you rely on in that regard? May I look while I'm sitting? Sure. Thank you, Your Honor. Then we'll ask them to give us their best case on that Mr. Turner is a public figure. And you can tell us your best case for why he's not a public figure. Thank you. I appreciate it, Your Honor. You might look at Curtis Publishing Company versus Butts, a Supreme Court case in 1967 that dealt with George's coach, where the United States Supreme Court said he was a public official. I believe that was a public official with a limited purpose, but I'll look at that, Your Honor. May it please the Court. Judge Rustati, just to answer your question about the jurisdiction, there was a question raised by this court about subject matter jurisdiction. We went back to the district court. We at Paul Weiss filed an affidavit, and in the docket in the district court, an order was entered on June 30 of this year, June 30, 2017. Docket number 98. It is Judge Gale's opinion. After that, the material went back to Judge Gale's finding now that jurisdiction was proper. So I . . . The affidavit said that none of the partners are . . . Florida residents. We have nothing against the State of Florida, but it is a fact that there was subject matter jurisdiction. Thank you. If I may begin just by answering some of the statements that . . . Absolutely not, Your Honor. Number one, Your Honor is absolutely right about the Butts case, and indeed we cited in the brief. It's not just Butts. There's a whole line of cases about football coaches, basketball coaches, players, and assistant coaches. And it was confusing to us to see that the plaintiff in this court, as the plaintiff attempted in the district court, tried to distinguish those cases by saying, well, in those cases, the plaintiff was a limited purpose public figure because the allegations concerned the performance of that person. Well, that's exactly what this case is all about, the performance. Well, the district court didn't talk about this at all, but it seems to me this might be the cleanest way to affirm the judgment in this case is just say, look, he's a public official, no actual malice pled in the complaint. Judgment of the district court affirmed. Your Honor, we agree completely. We spent as much time in the district court at the argument on actual malice as we did on these other issues. It is very plain that Mr. Turner, for this purpose, is a limited purpose public figure, and there is no allegation of actual malice. And as I believe Your Honor may know, in the Michelle versus New York Post case written by Judge Marcus in 2016, that is precisely what this court did. There was a dismissal on grounds of opinion, and that panel said we're going to reach an issue that the district court did not reach, actual malice. And not only is that something that I respectfully submit the Court of Appeals can do when it's efficient and makes sense, but it's something that the Court of Appeals has a special role to do in these kinds of cases. In the Bose case in the U.S. Supreme Court, that court said, Courts of Appeals pay special attention to constitutional issues and particularly issues of actual malice. And the attempt to plead actual malice here is it is precisely the kinds of allegations that have been rejected again and again and again. Indeed, in Michelle, this court said in 2016 that these kinds of conclusory allegations, and it's really what you just heard at the beginning from plaintiffs' counsel. First of all, there's not a shred of evidence that is alleged. Each time we hear the story, the story gets embellished. I think I heard just now Commissioner Goodell gave an order about what this report was supposed to say. There's absolutely no evidence of that. It's irresponsible to say it. Moreover, the law is clear, not only in Michelle, but in St. Amand, in all the Supreme Court cases, that simply saying someone has a bias does not establish actual malice. There was an opinion written by two members of this panel earlier this year. I apologize we didn't cite it. I think it's Tobinick, if I'm pronouncing the name correctly, and that was a situation where there was a motion to strike a libel claim on the basis of a slap statute, and the court evaluated actual malice and said, again, just saying somebody has a bias does not satisfy that. Well, they do allege knowing and reckless. They allege it in the sense that they say the words knowing and reckless, but to establish actual malice, you have to establish that the defendant actually knew the statement was false, or in the words of St. Amand and the other Supreme Court cases, had a high degree of subjective awareness of probable falsity. What it really means is that you're reckless in that you know, if you ask the next question, you know the answer you will get will show that the statement you're about to make is false. But you don't ask the question. You're reckless. There is absolutely no allegation of any kind in this case that goes to any of those issues, and indeed everything about the report, I respectfully submit, negates actual malice. It negates it because this is a 140-page report. After a three-month investigation, the plaintiff was interviewed twice, and I would say it is stunning. We have never, we've read a lot of libel cases in connection with this case and others, we have never seen a libel case where, number one, the plaintiff concedes the truth of every essential statement made in the report. And on this blow-up doll incident that was just the subject of a few questions, Judge Gales was extremely careful. He set out in his opinion ten facts stated in the report that he said supported and were the basis of the opinion that Mr. Turner had participated in the taunting. He said correctly in his opinion that plaintiff conceded the truth of those facts and plaintiff has not assigned any error to those findings. So, number one, all the essential facts are conceded to be true. And number two, as we said in our papers and as plaintiff concedes, in almost every one of the essential issues here, plaintiff, and I'm going to be direct, plaintiff lied to the defendants during the interviews and during the investigation. And that lie is very, those lies, excuse me, are very significant. First, on the issue of actual malice, the lie was, as many lies, the truth came out. And the report says, the report is extremely careful and extremely deferential actually to Mr. Turner. But the report reports what Mr. Turner says. He said, we didn't believe, when he said, I don't remember anything about giving the male blow-up doll to the player who was mercilessly teased for being gay. Many of the people reported it. That was a lie. He's now conceded it's a lie. The fact that he lied is additional reason that the conclusions in the report were correct. If the blow-up doll incident was so harmless and meaningless, why did he feel the need to lie? And now, when you see the explanation that he gives, the explanation that he gives in the complaint and in the papers here is, well, he was teaching people, what will happen if you don't properly relate to your spouses or significant others? Well, every member of the offensive line got a female blow-up doll and one got a male blow-up doll, and the one who got the male blow-up doll is the person who was mercilessly teased for being gay. How do you possibly argue that that is not a protected opinion? These are important matters. We're arguing about blow-up dolls, but, of course, these are significant issues of public concern. When Jonathan Martin left the team as the plaintiff concedes, that set off a firestorm of national comment. These issues of what happens in a workplace are important issues that we're debating every day in this country. I want to go back to the allegations of the complaint. Certainly, Your Honor. And I just had it, and I've just reread the whole complaint. It doesn't use the word malice. That's true. But it does, and you just cited Judge Marcus' opinion and Michelle, which says, to plead malice, Michelle must allege facts sufficient to give rise to a reasonable inference that the false statement was made with knowledge that it was false or with reckless disregard of whether it was false. So my question to you is, certainly if you allege, you don't have to use the magic word malice, but throughout the complaint it says they made allegations or statements knowing it was false or with reckless disregard. They do say that in the complaint. Yes, Your Honor, they do. So your argument really is the complaint doesn't articulate the facts that would give rise to malice. Yes, that is. However, what I would add to that is that that is a specific requirement in public where a libel case concerns matters of public concern. There are lots of cases that come before this court where you don't have to allege specific facts. You can allege intent generally in a securities case, for example. You cannot do that under the Supreme Court precedent. In other words, what you have to say under the Supreme Court precedent is, yes, indeed, Turner's complaint says again and again and again, and the briefs here say again and again and again, the formulaic statement you acted with malice, you acted with recklessness, you acted with intent. But the Supreme Court precedent, because we're dealing with these First Amendment issues and this court's precedents say that you have to back that up with facts, and what that means is that you cannot simply say the defendant made an untrue statement and the defendant knew it was false. You've got to allege. What it was, what the untrue statement was and how they knew it was false and why. Exactly, and there's nothing in here about that. I got that. I'm just going to. We can't write an opinion saying, oh, the complaint doesn't allege malice, end of story, because it does have this other standard. We have to go to what you just articulated. Exactly. Okay, we can't just say, oh, it doesn't use the word malice, that's it. In the defamation context, is this an Iqbal-Twombly kind of thing? It goes beyond Iqbal and Twombly. It is Iqbal and Twombly, as the Michelle case said, but it goes beyond that because going back to New York Times and Sullivan in 1964, the Supreme Court and the appellate courts have made it crystal clear that you have to come forward with facts to show that the defendant knew the statement was false or had a high degree of awareness of probable falsity. And, in fact, there are authorities that even say that when you argue that there was so-called express malice, meaning that you actually had a visceral dislike for the plaintiff, that is not evidence of actual malice. Indeed, some cases say it negates actual malice because when you have hostility toward the plaintiff, it's more likely, believe it or not, that you believed the statement here. And, by the way, Your Honor, I don't want anyone to take away from this argument, our concession in any way, that there was indeed any malice here on the part of defendants towards Mr. Turner. And this is another fact that the cases say go to the issue of actual malice because you will see that, as Your Honor pointed out when Mr. Ginsburg was arguing about the blow-up doll incident, Your Honor pointed out quite properly, the report says that Incognito said, you know, Player A was a good guy. He didn't care about this. He sloughed it off. The report is very, very, very careful to put all the evidence, pro and con, about Mr. Turner. And, indeed, far from there being some animus towards Mr. Turner, when the report found that Mr. Turner had acted properly and should be commended, the report did that. The report has long passages about a situation where in the summer before Mr. Martin left the team, Mr. Martin didn't show up at some practice, and Coach Turner went out, talked to him, drew him out, tried to talk to him about his psychological problems, reported those psychological problems to Coach Philbin, who was the head coach of the Dolphins, and far from ignoring those facts, the report lays them out and then says specifically, we commend Mr. Turner. When the report found that Mr. Turner was doing things that were inappropriate in the opinion of the defendants, the facts were laid out and the opinion was stated and the opinion was clearly identified. When Mr. Turner did something that he should have done or went above and beyond, the report did exactly the same thing, which is, again, as I say, negates any possible argument of actual malice. Tell me if I'm wrong about this. The article, excuse me, the report does have some statements of opinion, but it also has and is replete with statements of provable fact. Yes. Okay, so you're not relying on opinion versus fact really for your main argument? You're just saying they haven't shown statements of provable fact are false or certainly they haven't shown the malice requirement. Well, the way I would put it, absolutely they have not shown the malice, but I would also say that when you look at the four statements that are being focused on, there are many statements or several statements about Mr. Turner in the report. There are four of those statements that Mr. Turner focuses on and assigns to be defamatory libelous statements. Of those four statements, we believe each one is a statement of opinion based on disclosed facts. I mean, one of them, for example, the statement that it was poor judgment to send the texts to Mr. Martin is obviously a quintessential statement of opinion, and the texts are all laid out there. So what we say is for each of the points that he says are actionable, that is an opinion. In addition, actual malice has not properly been pled. I see that my time is up. I would simply close, unless the panel has further questions, I would simply close by saying this is an extraordinary case. This is a matter of public interest where full constitutional protections apply, and the positions that we believe that the plaintiff is urging are unprecedented in libel and constitutional law and would really chill the most important kind of speech that we have in our society. All right, thank you. Thank you very much. Mr. Ginsburg, you have reserved five minutes for rebuttal. Thank you, Your Honor. First of all, the words actual malice, respectfully, are in the complaint in paragraph 134, right? But they don't, it's not attached to specific allegations. Insofar as it adopts the previous allegations in the complaint, it is. I see. So everything that was said in the complaint, which most of the time you say reckless and in, they were reckless in not including. Reckless in, that's basically what we're talking about, reckless and not including. That's correct. That's correct. Second of all, it's important to really think about whether this is a First Amendment constitutional case or whether this is a private commercial case which happens to have a public viewing. Well, you know, if he is a public figure and a limited public figure, this is all about, to the extent this is focused on Coach Turner in part, it's with regard to his, what he's doing as a football coach. So the limited public figure thing doesn't really change anything in this case. Respectfully, I don't think that's quite right. Really? Is that something else besides his coaching? Mr. Turner has a public persona, is a public figure for purposes of X's and O's and calling plays. He's not a spokesman for the team. Well, just a second. Everybody knows that coaches do more than do X's and O's, particularly nowadays. Isn't it about making everybody get along, encouraging people? Isn't that part of coaching? I never heard that that wasn't part of coaching. That's the private part of coaching. That's not the public part of coaching. The public part of coaching is whether the offensive linemen are properly aligned in order to help the running back get through the line. I don't know what you're talking about. Look, a coach is responsible for the performance of the team or, in this case, the offensive line, right? And that involves both how the players feel and how they relate to each other and what the play is. It's all part of coaching. Isn't that all part of coaching? I think yes and no. It's not the part of coaching for which Mr. Turner is known in any respect, any more than all of us in our private work life try to create a conducive atmosphere. So that means that what a judge does in chambers is public, is a matter of public interest. I don't think that that kind of invasion of a judge's privacy is appropriate or would create a First Amendment right. What happened here… Nobody went to Mr. Turner's house. They're interviewing Mr. Turner and players that he coaches. I understand that. But that doesn't make this a constitutional case, especially when it is alleged, and we should have had the right to prove, that this had nothing to do with the NFL carrying a wit about anything other than its pecuniary interest in how it's being perceived by the public for purposes of its business. Commissioner Goodell doesn't care if one player is abusing another unless it becomes public and unless he's going to hurt his ratings. I think you're wasting your argument about talking about anything else besides what was in the Wells report and whether it's true or false. What is not true in the most acute problem with the report is that things were couched as opinion. And first of all, they weren't the defendant's opinion. They were the commissioner's opinion. Those aren't true opinion. And second of all, there were certain opinions that were discernibly could be disproven. And that takes it out of the realm of protected opinion. And we've noted what those opinions are. He says there are four of them. Give us one example that you say is an opinion that wasn't really an opinion. It was a provable, this false statement. Just give me one example of what you're talking about. When Mr. Turner implored Mr. Martin to contact Mr. Incognito, it was characterized as an unprofessional act by Mr. Turner. If the true facts had been set forth in that location in the report, in the context of what Mr. Turner was accomplishing and why he thought not that it was adverse or might be harmful to Mr. Martin, but just the opposite, objective facts, then that opinion would have been, the effect of that opinion would have been negated. If Mr. Wells had set forth the history of Mr. Martin, the history of Mr. Martin and Mr. Turner, Mr. Turner's understanding of what made Mr. Martin tick, the fact that Mr. Martin responded to Mr. Turner, I want to send this to Ritchie, I want to talk to Ritchie, but I'm being advised not to. If we had had discovery to allow us to determine who it was that was pressuring Martin not to reach out to Incognito, that would shed light, I respectfully submit, on who was really driving this train in terms of what the defendants were up to. Those are, it's, the unprofessional opinion is discernibly misleading and we should have the right to prove that. Thank you. Alright, your time has expired but I'll let you go over two minutes. The case is now submitted. Thank you, Your Honor.